# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3286 | **DATE** | 4/6/2000 |
| **CASE TITLE** | Sylvia Cruz, et al. Vs. Town of Cicero | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion for preliminary injunction is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 0 7 2000 date docketed | 63 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYLVIA CRUZ, LUZ MUNOZ, ARMAND )
GONZALEZ, VICTOR SAGAS, MICHAEL )
ADAMS, PINNACLE BANK, as Trustee )
under Trust Number 11500 dated )
March 20, 1997, Trust Number 10328 )
dated September 26, 1991, and Trust )
11279 dated February 22, 1996, and )
VAL., INC., an Illinois Corporation, ) 99 C 3286
)
          Plaintiffs, ) Judge George W. Lindberg
)
v. )
)
TOWN OF CICERO, ILLINOIS, a Municipal )
Corporation, )
)
          Defendant. )

DOCKETED
APR 07 2000

MEMORANDUM OPINION AND ORDER

Plaintiffs, a group of real estate developers ("selling plaintiffs") and individuals wishing to purchase property from those developers ("purchasing plaintiffs"), filed a verified complaint and a motion for a preliminary injunction, asserting that the Town of Cicero ("Town") violated their constitutional and civil rights when it applied a zoning ordinance ("ordinance") requiring 1½ parking spaces per unit to a condominium building that the developer plaintiffs owned and the purchaser plaintiffs wished to purchase units in. The complaint contains allegations of federal violations under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, and the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. The plaintiffs also alleged state law claims of estoppel, takings and inverse condemnation. On May 25, 1999, plaintiffs moved for a preliminary injunction. Judge Marovich referred the matter to Magistrate Judge Keyes, who held an evidentiary hearing on June 10, 1999. On June 16, 1999, plaintiffs amended their verified

complaint, adding claims asserting violations of due process and equal protection. The magistrate judge issued a Report and Recommendation ("R&R") on the matter July 28, 1999. On February 1, 2000, the case was reassigned to this court, which must now review the magistrate judge's findings pursuant to 28 U.S.C. § 636(b)(1). Under the statute, this court must "make a de novo determination of those portions of the [magistrate judge's] . . . recommendations to which objection is made." *Id.* "A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

The magistrate judge submitted a comprehensive, 50-page R&R in which he concluded that plaintiffs have failed to establish the factors necessary for a preliminary injunction, particularly a reasonable likelihood of success of the merits. *See Cruz v. Town of Cicero*, 1999 WL 560989, *18 (N.D.Ill.). When determining whether to issue a preliminary injunction, the court considers whether plaintiff has established: "1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied. If the moving party clears these hurdles, the court must then consider: 3) the irreparable harm the non- moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied, and 4) the public interest, i.e., the effect that granting or denying the injunction will have on non-parties." *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir.1996). Plaintiffs filed objections to the R&R, which the court will address below.

Briefly, the Town refused to issue certificates of compliance for condominiums the selling plaintiffs own and were attempting to sell because the buildings do not have 1½ parking

spaces per unit as the Town asserts is required under its zoning ordinance.[1] Without a certificate of compliance, the condominiums cannot be sold and the purchasing plaintiffs' real estate closings were indefinitely postponed.

> Under Section 2.B.1, entitled "Scope of Regulations," the ordinance states that:
> [a]ll buildings erected hereafter, all uses of land or buildings established hereafter, all structural alteration or relocation of existing buildings occurring hereafter, and all enlargements of or additions to existing uses occurring hereafter shall be subject to all regulations of this Ordinance which are applicable to the zoning districts in which such buildings, uses or land shall be located.

As the magistrate judge noted, this provision apparently describes the buildings and land subject to the ordinance's provisions. Section 2.L.2 of the ordinance states that:

> [e]xcept as otherwise provided herein, the lawful use of a building existing at the effective date of this Ordinance, may be continued, although such use does not conform to the provisions hereof. If no structural alterations are made, a nonconforming use of a building may be changed to another nonconforming use of the same or of a more restricted classification. Whenever a nonconforming use has been changed to a more restricted use or to a conforming use, such use shall not thereafter be changed to a less restricted use. Nothing contained herein shall be interpreted to permit the structural alteration, or addition, to an existing nonconforming use.

Section 7.B specifically provides that:

> "[i]n connection with any building or structure which is to be erected or substantially altered, and which requires off-street parking spaces, there shall be provided such off-street parking space in accordance with regulations set forth hereinafter...."

Under this provision, multiple-family dwellings that have been "substantially altered" must have at least 1½ parking spaces for each unit.

The selling plaintiffs allege that because they did not structurally alter their buildings when converting them from apartments to condominiums, they were permitted to change "a

---

[1] The court presumes familiarity with the magistrate judge's findings in the R&R.

-3-

nonconforming use of a building ... to another nonconforming use of the same or of a more restricted classification" without adding the 1½ parking spaces per unit required for new or structurally altered buildings. They claim that the application of the parking requirement to their buildings is improper under the ordinance because they were not "structurally altered" after February 7, 1977.

## VOID FOR VAGUENESS

The first objection is to the magistrate judge's finding in the R&R that the ordinance is not unconstitutionally vague. Plaintiffs allege that "the Magistrate [Judge] failed to recognize that the Ordinance at issue is, contrary to his finding, a penal regulation." They base their contention that this is a criminal statute instead of a local zoning ordinance on § 10 of the ordinance, entitled "Violation and Penalty," which states that any person or entity found in violation of the ordinance "shall *upon conviction*, be fined not less than 25.00 dollars nor more than 500.00 dollars for each offense" (emphasis added). Plaintiffs conclude that the court must therefore apply a more strict test for vagueness because criminal penalties may result from a violation of the ordinance.

The front page of the ordinance states that it "contains the zoning ordinance of the Town of Cicero" and that it supersedes the previous ordinance, "Vol. 1, Chapter 40 of the Town of Cicero Code of Ordinances." The court finds that this ordinance is not part of any state or local criminal code and does not result in a misdemeanor conviction. It is therefore merely a business or economic regulation.

"Where no suspect class or fundamental right is encumbered, economic regulations, such as zoning ordinances, need not be narrowly tailored." *Smith v. Lower Merion Township*, 1992

WL 112247 (E.D.Pa.) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843 (1972)). "(E)conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99, 102 S.Ct. 1186, 1193 (1981). "The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.*

Plaintiffs have cited no case involving an economic regulation that a court has held unconstitutional and instead rely only on cases that involve statutes or ordinances that implicate constitutional rights protected by the First Amendment or that result in criminal convictions. As indicated above, "vagueness is tested by more exacting standards when constitutionally protected rights are threatened–in such circumstances vagueness and overbreadth analysis are cognate." *Record Head Corp. v. Sachen*, 682 F.2d 672, 674 (7th Cir. 1982). Plaintiffs fail to explain why, under the less rigorous standard that applies to business regulation, this ordinance is unconstitutionally vague.

What they do argue is that the Town applied inconsistent constructions of the term "alter" as that term is used in different sections of the ordinance. They maintain that the only consistent interpretation of the ordinance is to construe "substantially alter" in Section 7.B, which establishes parking requirements, consistently with the term "structural alteration" in Section 2, which establishes the scope of the ordinance. If this is done, they conclude that only "alterations

-5-

likely to impact upon the demand for parking: alterations that increase the size of the buildings and, as such, are likely to increase the number of dwelling units," would be subject to the ordinance.

After presenting what is essentially an argument regarding the statutory interpretation of the ordinance and how they think it should apply to their case, plaintiffs state that the individual Town officials' inability to provide a clear interpretation of the term "substantially alter" during their depositions indicates that the ordinance is impermissibly vague. Despite the need for a statute or ordinance to provide guidance to law enforcement, a specific official's lack of knowledge or education as to an ordinance's application does not by itself render an otherwise constitutional ordinance unconstitutionally vague. Underlying plaintiffs' argument that the ordinance is vague as applied to the buildings at issue is their assertion that only changes to a building that increase the number of units trigger the ordinance's application. Nothing would limit the Town's power to require parking spaces even if the alterations did not increase unit size. Plaintiffs are simply not entitled to decide that the only time such an ordinance should be or can be applied–and is therefore constitutional–when the number of units increases.

It is notable here that, as the magistrate judge indicated, "economic regulation is 'directed at people who are assumed to have some expertise and [possess the] ability to demand clarification." *Record Head v. Sachen*, 682 F.2d 672, 676 (7th Cir. 1982). "Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *National Paint & Coatings Assn. v. City of Chicago*, 803 F.Supp. 135, 148 (N.D.Ill. 1992). Plaintiffs allege that they were aware of the ordinance. As "sophisticated businessmen who have long engaged in their type of work," they could have

inquired into the application of the ordinance to their projects. Although they argue that the application of the ordinance to their building is so erroneous as to reveal its unconstitutional vagueness, the language in the ordinance referring to "structural alterations" is not so vague that it would incite no inquiry as to whether tearing down walls, installing new kitchen appliances and cabinets, refinishing floors, constructing new roofing, installing new plumbing, and rewiring the building constitutes such an alteration. Plaintiffs' queries as to whether merely painting or redecorating the apartments would trigger the application of the ordinance are irrelevant, as those types of alterations are simply not at issue here. Parties "cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191 (1982).others. "An ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688 (1971). Here, the provision requiring 1½ parking spaces per unit describes a clear standard of conduct. The court finds that the ordinance is sufficiently clear as applied to this plaintiffs' situation to pass constitutional muster. It therefore adopts the magistrate judge's finding on this issue.

## ARBITRARY AND CAPRICIOUS

Plaintiffs also dispute the magistrate judge's findings that the Town's denial of the certificates of compliance was not arbitrary and capricious in violation of their due process and equal protection rights. Selling plaintiffs maintain that because they did not "substantially alter"

the buildings at issue, the Town's reliance on its zoning ordinance as the basis for its decision indicates personal animus, irrational conduct or invidious discrimination. In addition, plaintiffs claim that the Town has not proffered a sufficient "rational basis" for its application of the ordinance to their building. The record simply does not support any of these contentions.

First, the court has already noted in its discussion on vagueness that it is not as clear as plaintiffs would like the court to believe that they did not "structurally" alter their buildings. It is therefore not so clear that the application of the ordinance is so beyond any reasonable interpretation or evaluation of the facts as to be arbitrary and capricious. Second, the court agrees with the magistrate judge's finding that there was "not a shred of evidence that the Town treated the Plaintiffs differently out of sheer vindictiveness" or that any Town official was motivated by any animus toward any of the plaintiffs. *Cruz* at *12. Throughout the previous three years that the selling plaintiffs purchased apartment buildings and renovated them for sale as condominiums, the Town provided certificates of compliance and parking variances (which provided parking on public property) for these buildings. There is ample evidence that the Town has accommodated plaintiffs in their attempts to have the buildings at issue certified.

Plaintiffs claim that renovating the subject buildings did not increase the need for parking and that municipal officials are not entitled to apply a zoning law without a rational basis, citing *Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985). They further assert that the Town officials cannot act on a basis "other than the promotion of a legitimate public policy." *Creekside Associates v. City of Wood Dale*, 684 F.Supp. 201 (N.D.Ill. 1988). Of course, as the magistrate judge pointed out, relieving congestion on public streets is a legitimate municipal concern. Nor have plaintiffs proved their claim that the transformation from an apartment

-8-

building to a condominium building in no way affected parking. Town President Betty-Loren Maltese stated that she had only recently become aware that the Town even had a zoning ordinance requiring 1½ parking spaces per unit. Although she believed that more condominiums would have a positive effect on the Town, she testified that "after receiving numerous complaints, the Town has become increasingly concerned about the inadequate parking." *Cruz* at *6. She stated that she believed condominium residents were more likely to own more cars than apartment renters, and that additional parking requirements should therefore be imposed for condominiums. *Id.* This is not, as plaintiffs contend, a "patently inapplicable public policy 'basis' for [the town's] acts." The bases for both the policy itself and for defendant's application of it to the building at issue in this case are clearly supported by the record; plaintiffs merely disagree with it. The court agrees with the magistrate judge's conclusion that plaintiffs have failed to establish a likelihood of success on their due process and equal protection claims.

## FAIR HOUSING ACT

As the Fair Housing Act (FHA) claims, the magistrate judge found that plaintiffs had failed to establish a likelihood of success on the merits. Although he noted that this finding was based mainly on plaintiffs' failure to "explain, discuss, or present evidence relating to the application of these Counts and their corresponding FHA sections," he also specified that under a disparate treatment analysis, plaintiffs had failed to establish that Sylvia Cruz had a mortgage commitment that would allow her to make out a prima facie case that she was "ready and able to buy" the property at issue. Plaintiffs object to this finding, proffering a mortgage commitment from National City Mortgage Co. for Sylvia Cruz. Despite this, the court finds that plaintiffs are still unable to establish a prima facie case.

As plaintiff points out, they can establish a Fair Housing Act claim by 1) showing that the defendants treated the plaintiffs differently because of their race; or 2) showing that the Town's conduct, while racially neutral on its face, has a negative impact that falls disproportionately on persons of a particular race. *Metropolitan Housing Devel. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1288-89 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025 (1978). Plaintiffs maintain that they have established a prima facie case under both the disparate treatment and disparate impact theories; they object to the magistrate judge's finding to the contrary.

To establish a prima facie case of disparate treatment, a plaintiff must show: 1) that she is a member of a protected class; 2) defendant was aware that plaintiff was a member of a protected class; 3) plaintiff was ready and able to purchase the property; and 4) defendant refused to deal with plaintiff. *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985). The magistrate judge found that purchasing plaintiffs, Sylvia Cruz and Luz Munoz, did not submit evidence of their readiness to purchase condominiums in the form of a mortgage commitment. As noted above, plaintiffs submitted copies of a mortgage approval for Cruz from National City Mortgage Co. They maintain that this establishes their prima facie case.

Despite the showing of a mortgage commitment, the court concludes that plaintiffs have not established that they have a likelihood of success on their disparate treatment claim. First, the court finds that they have not established that the town refused to deal with them. The record indicates that the Town granted building permits to the selling plaintiffs and granted parking variances for the building at issue. Although the Town refused to issue a certificate of compliance necessary for the sale of the condos to purchasing plaintiffs, there is evidence that the Zoning Board of Appeals held a hearing on the matter at which the Board approved non-

conforming status for the building. Beth Janicki-Clark, the assistant town attorney, made arrangements for an inspection the following day. The units passed the inspection and although the Town Board initially approved legal non-conforming status, it ultimately refused to issue certificates of compliance. The record reveals that the Town in many ways cooperated with plaintiffs and accommodated their schedules. It does not support a contention that the Town simply refused to deal with the plaintiffs. *See Ileka v. Lyons*, 1999 WL 412445, *2 (N.D.Ill.).

If plaintiffs had established a prima facie case, the burden would shift to defendants to articulate a legitimate, nondiscriminatory reason for their conduct. If defendants do so, the burden shifts back to plaintiffs, "who bear() the ultimate burden of proving that the defendants' rationale is a pretext, i.e., a sham, lie, or fabrication unworthy of credence, and that the defendants' actions against [them] were truly motivated by racial or gender animus." *United States v. Badgett*, 976 F.2d 1176, 1178 (8th Cir.1992). The Town has proffered a legitimate, nondiscriminatory reason for its decision to deny the certificates of compliance–failure to comply with the zoning ordinance.

Plaintiffs claim that the application of the zoning ordinance to the units at issue indicates pretext because the conversion of the building to condo units does not impact the need for parking. As indicated above, however, Town president Betty-Loren Maltese testified that she believed that condo owners did increase the need for parking and that the Town had received numerous complaints about a lack of parking. Plaintiffs have not presented evidence that the Town did not actually believe that a parking problem existed with condo conversions. Even a defendant's mistaken belief does not prove pretext because "(a)n honest explanation of the unequal treatment is not pretextual simply because it is poorly founded or unfair." *Reed v. Amax*

*Coal Co.*, 971 F.2d 1295, 1300 (7th Cir.1992) (Title VII and § 1981 claims). The Town officials' inability to clearly articulate the application of the ordinance does not invariably lead to the conclusion that they did not *believe* that the ordinance was applicable to the buildings at issue. Again, it is also not so clear that the building did not undergo structural alterations, and that the proffered reason was therefore devoid of truth, to establish pretext.

Finally, plaintiffs object to the magistrate judge's finding that they had not established a likelihood of success on the merits of their disparate impact claim under the FHA. They claim that the effect of the ordinance in this case is to "steer" Hispanics to purchase property outside of Cicero. The magistrate judge reviewed the "critical factors" that guide the court in its exercise of discretion when determining if a particular case warrants relief under the FHA when evidence of intent is absent:

> 1) the strength of the plaintiffs' discriminatory effect showing; 2) some evidence of discriminatory intent; 3) the defendant's interest in taking the action at issue; and 4) whether the relief requested requires the defendant to affirmatively act (for example, construct housing) or simply restrain interference with those who wish to provide it. *Arlington Heights*, 558 F.2d at 1290. All of the facts are to be considered together and balanced against each other. *Hispanics United of DuPage County v. Village of Addison*, 988 F.Supp. 1130, 1151 (N.D.Ill.1997). The first element requires a showing of a greater adverse impact on one race than another. *Hispanics United*, 988 F.Supp. at 1155.

*Cruz* at *9. The magistrate judge concluded that no evidence existed that: Hispanics were more negatively impacted than other races, that defendant acted with discriminatory intent, or that defendant had no interest in implementing the regulation purported to adversely affect Hispanics. The relief requested–issuance of certificates of compliance and an abandonment of its current parking ordinance–entailed affirmative acts on the Town's part and not merely a restraint on interference. In sum, plaintiffs have simply submitted no evidence to support their assertion that

the effect of the Town's application of the ordinance to the buildings at issue was to steer Hispanics out of Cicero altogether. The court agrees with the magistrate judge's assessment that the plaintiffs have not established a likelihood of success on their disparate impact claim.

After a de novo review of the record, including the numerous depositions and the transcript of the injunction hearing, the court finds that plaintiffs have not established a likelihood of success on the merits of any of their claims. After giving "fresh consideration to those issues to which specific objections have been made," the court adopts the magistrate judge's R&R as to all issues save his conclusion that purchasing plaintiffs did not establish that she was ready and able to purchase the property at issue. *Rajaratnam v. Moyer*, 47 F.3d 922, 925 n.8 (7th Cir.1995) (quoting 12 Charles A. Wright et al., Federal Practice and Procedure § 3076.8 (Supp.1994). It finds, however, that plaintiffs have still failed to establish a prima facie case under the FHA or to rebut the Town's legitimate, nondiscriminatory reason for its actions.

**ORDERED**: For the foregoing reasons, the court denies plaintiffs' motion for a preliminary injunction.

**ENTER**:

George W. Lindberg
United States District Judge

DATED: APR 0 6 2000

-13-